STATE of Missouri, Respondent,

v.

Matthew T. GRAYSON, Appellant.

No. SC 90971.

Supreme Court of Missouri,
En Banc.

March 29, 2011.

Alexa I. Pearson, Public Defender's Office, Columbia, for Grayson.

Terrence M. Messonnier, Attorney General's Office, Jefferson City, for the State.

LAURA DENVIR STITH, Judge.

Matthew T. Grayson appeals from a judgment of conviction of possession of a controlled substance. Mr. Grayson argues that the trial court erred in overruling his motion to suppress the evidence of methamphetamine found in a patrol car in which Mr. Grayson was riding because the evidence was the product of an unreasonable seizure of Mr. Grayson's person. This Court agrees that the seizure of Mr. Grayson was unreasonable initially because it was based solely on an uncorroborated anonymous tip. Further, once the officer observed that Mr. Grayson was not the person mentioned in the tip, and had committed no traffic infractions, it was improper for the officer to continue to detain him simply because he had in the past been the subject of arrests. The taint from this improper seizure was not attenuated by the fact that, as a result of the illegal detention, the officer learned that Mr. Grayson had an outstanding municipal warrant and arrested him on that warrant. None of the other exceptions to the "fruit of the poisonous tree" doctrine apply. The trial court erred in not suppressing the evidence of methamphetamine because the evidence of methamphetamine was the fruit of Mr. Grayson's unreasonable seizure.

I. FACTUAL AND PROCEDURAL BACKGROUND

On the evening of March 25, 2008, Officer Paul Lambert of the Phelps County sheriff's department was patrolling the Newburg area in Phelps County. He received a dispatch that a possible drunken driver had left a nearby address on West Fifth Street in a red Ford pickup truck. The dispatcher also gave the name of the suspect, Terry Reed, whom Officer Lambert knew, and stated that Mr. Reed had an outstanding parole warrant. The information for the dispatch came from an anonymous tip. No evidence was ever presented regarding the source of or corroboration for the anonymous tip.

Officer Lambert initially looked for the red Ford truck at and near the location of the West Fifth Street address. Unable to find the truck, he continued patrolling the area. Approximately one-half mile away, the officer saw a red Mazda pickup truck drive by on Main Street. The officer recognized that the truck was not the same make as that mentioned by the anonymous tip and that it was not in the location mentioned in the tip. He thought from his view of the truck as it drove by that the driver resembled Mr. Reed, however, so he began to follow the truck. Officer Lambert continued following the truck for a few blocks and observed no traffic violations. Neither did he see any signs that the driver of this red truck was intoxicated, as the tipster said was true of the driver of the Ford truck that was the subject of the tip. Nonetheless, Officer Lambert decided to conduct an investigatory stop and pulled the vehicle over. As soon as the officer walked up to the window of the red Mazda truck, he realized that the driver was not Terry Reed—the subject of the tip—but rather was someone else he knew, Matthew Grayson.

At this point the officer knew that the vehicle was not the one mentioned in the tip—it did not match the make of the truck mentioned in the anonymous tip, it was not being driven by the person mentioned in the anonymous tip, it was on a different street, the driver was not intoxicated and the driver had committed no traffic infractions. Further, the officer had no knowledge at the time he stopped the truck of any current warrants for Mr. Grayson's arrest.

Nonetheless, because the officer knew that Mr. Grayson previously had some arrests, he decided he would hold Mr. Grayson while he checked to see if there happened to be a current warrant. Officer Lambert told Mr. Grayson that he was conducting an investigative stop and that he was looking for someone else, but that "I need to see your driver's license." The officer testified that Mr. Grayson was not free to leave at that time. Mr. Grayson handed over his license, which Officer Lambert took back to his patrol car. When the officer checked with dispatch, he determined that there was a municipal warrant for Mr. Grayson's arrest. He then placed Mr. Grayson under arrest, put him in the backseat of the patrol car and transported him to jail.[1]

After arriving at the jail, Officer Lambert removed Mr. Grayson from the patrol car. The officer then lifted the backseat of the patrol car and found a small bag of a white powdery substance under the seat. Mr. Grayson protested that the bag was not his. Prior to his shift, however, Officer Lambert had cleaned the patrol car and had been the only one in the car other than Mr. Grayson. The white powdery substance later was tested at a crime laboratory and found to be methamphetamine.

Mr. Grayson was charged with possession of a controlled substance. The trial court overruled his motion to suppress the bag of methamphetamine and any testimony pertaining to it. After a bench trial, Mr. Grayson was found guilty of possession of a controlled substance and was sentenced to seven years imprisonment. After decision by the court of appeals, this Court granted transfer. *Mo. Const. art. V, § 10.*

## II. STANDARD OF REVIEW

At a hearing on a motion to suppress, "the state bears both the burden of producing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled." *State v. Franklin,* 841 S.W.2d 639, 644 (Mo. banc 1992). "When reviewing the trial court's overruling of a motion to suppress, this Court considers the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." *State v. Pike,* 162 S.W.3d 464, 472 (Mo. banc 2005). "The Court defers to the trial court's determination of credibility and factual findings, inquiring only 'whether the decision is supported by substantial evidence, and it will be reversed only if clearly erroneous.'" *State v. Goff,* 129 S.W.3d 857, 862 (Mo. banc 2004), quoting *State v. Edwards,* 116 S.W.3d 511, 530 (Mo. banc 2003). By contrast, legal "determinations of reasonable suspicion and probable cause" are reviewed *de novo. Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

## III. MR. GRAYSON WAS SEIZED UNREASONABLY IN VIOLATION OF HIS FOURTH AMENDMENT RIGHTS, AND THE TRIAL COURT ERRED IN ADMITTING AT TRIAL EVIDENCE DERIVED FROM THAT SEIZURE

*A. Initial Stop and Continued Detention Were Illegal*

---

1. At the time Officer Lambert arrested Mr. Grayson, he performed a pat-down search of Mr. Grayson's person incident to the arrest. Officer Lambert found a glass pipe inside Mr. Grayson's coat pocket. The officer conducted a field test on the pipe, which showed positive indicators for methamphetamine. It is not clear whether a laboratory test later was performed or what it showed, but the pipe never was admitted as an exhibit at Mr. Grayson's trial, and he was not charged with any crime concerning its possession.

■ Mr. Grayson argues that the initial investigatory stop of his vehicle was invalid because it was based on an anonymous tip that failed to provide reasonable suspicion. Further, he argues, his continued detention after Officer Lambert determined that he was not Terry Reed was illegal because it was made without reasonable suspicion or articulable facts on which to base a belief of criminal activity. This Court agrees.

■ The Fourth Amendment to the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated."[2] *U.S. Const. amend. IV.* A person is seized "when the totality of the circumstances surrounding the incident indicates that 'a reasonable person would have believed that he was not free to leave.'" *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007), *quoting, State v. Werner*, 9 S.W.3d 590, 600 (Mo. banc 2000).

Here, Officer Lambert detained Mr. Grayson by compelling him to pull his vehicle over to the side of the road for questioning. The officer said that Mr. Grayson was not free to leave, and a reasonable person would not feel free to leave once he was pulled over by the police and his license taken. This constitutes a seizure that implicates the Fourth Amendment. *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) ("stopping a car and detaining its occupants constitutes a seizure within the meaning of the Fourth Amendment"); *State v. Hyland*, 840 S.W.2d 219, 221 (Mo.

banc 1992) ("a vehicle stop . . . constitutes a seizure within the meaning of the Fourth and Fourteenth Amendments").

■ The issue, therefore, becomes whether the seizure was reasonable for Fourth Amendment purposes. The State argues that it was a reasonable *"Terry stop"* under the principles set out in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, " 'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot ...,' the officer may briefly stop the suspicious person and make 'reasonable inquiries' aimed at confirming or dispelling his suspicions." *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), *quoting, Terry*, 392 U.S. at 30, 88 S.Ct. 1868. A *Terry* stop remains valid only so long as it is "based on reasonable suspicion supported by articulable facts that the person stopped is engaged in criminal activity." *State v. Deck*, 994 S.W.2d 527, 534 (Mo. banc 1999). In evaluating reasonable suspicion, courts must "determine if the content of the information possessed by the police and its degree of reliability is sufficient to create a 'reasonable suspicion' of criminal activity." *State v. Berry*, 54 S.W.3d 668, 673 (Mo.App.2001).

■ A suspicion is reasonable when, in light of the totality of the circumstances, the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S.Ct. 1868; *see also United States v. Cortez*, 449 U.S. 411, 417,

**2.** The Fourth Amendment is made applicable to state actors via the Fourteenth Amendment Due Process Clause. *Wolf v. Colorado*, 338 U.S. 25, 27–28, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). Article I, section 15 of the Missouri Constitution provides the same protection

against unreasonable searches and seizures as that of the Fourth Amendment. *State v. Oliver*, 293 S.W.3d 437, 442 (Mo. banc 2009). Consequently, the same analysis applies under both provisions. *Id.*

101 S.Ct. 690, 66 L.Ed.2d 621 (1981) ("[T]he detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity").

Where, as here, the initial stop is based upon an anonymous tip, special concerns arise. "[A] detention and search and seizure is unlawful if conducted solely on the basis of an anonymous tip." *Deck*, 994 S.W.2d at 536, *citing, Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). The police may, however, "properly consider such evidence if it is in conjunction with ... other, independent corroborative evidence suggestive of criminal activity." *Id.* In the absence of independent corroboration of the anonymous tip, the seizure will be found invalid. *Id.*

For instance, in *State v. Miller*, 894 S.W.2d 649, 650 (Mo. banc 1995), Mr. Miller was stopped based on information an officer obtained from an unknown source that a red car would be in a particular area transporting controlled substances. The police saw a red car in the area and stopped it. *Id.* Mr. Miller, a passenger, was asked for identification. He refused to produce it and put his hand in his pocket, where police saw and seized a small yellow bowl containing cocaine residue. Mr. Miller was arrested. *Id.* at 651.

In suppressing the drug evidence, this Court stated that the mere fact that information came through a police dispatch does not provide a basis for finding reasonable suspicion, for if it did, "the requirements of reasonable suspicion and probable cause would be rendered meaningless" because "police could simply filter a 'hunch' through a radio dispatch or cellular phone and have it come out reliable on the other end." *Miller*, 894 S.W.2d at 653.

Rather, the court must consider the source of the information provided by a dispatch; if the dispatch is based on information " 'obtained from an anonymous informant, the question is whether the police corroborated the details of the tip before making the stop.' " *Id.* at 653, *quoting, Franklin*, 841 S.W.2d at 644 n. 6. In *Miller*, independent corroboration was not made of the details of the tip other than the presence of a red car at the noted location. This was insufficient, and this Court held the stop illegal. *Id.* at 653–54.

*Miller* relied on *Franklin*, in which a driver was stopped based on a tip about a black car with an armed person in it in a particular area. 841 S.W.2d at 640. The officer searched the driver and driver's seat area and found no weapon. The officer then arrested the driver and performed a search incident to the arrest. The search incident to arrest produced evidence of illegal drugs. *Id.* at 640–41. On appeal, this Court held that this evidence should have been suppressed, stating:

> the record contains no evidence of a dispatch issued on the basis of reasonable suspicion, and the detaining officer did not personally observe, independent of the dispatch, any behavior that would justify the stop. The dispatcher was not called to testify at the suppression hearing. The record is silent as to the source of the information that [led] to the police dispatch. Without that information the court cannot determine whether the dispatch was based on reasonable suspicion.

*Id.* at 644.

In contrast to these cases, *Deck* shows what constitutes sufficient corroboration. In that case, police received an anonymous tip from an informant that Mr. Deck and his sister were involved in a robbery or homicide in Jefferson County and that

they would be armed and driving a gold two-door car.[3] 994 S.W.2d at 534–35. Police went to Mr. Deck's last known address and observed Mr. Deck drive by alone in a two-door gold car and pull into a parking space. There was independent, corroborative evidence suggestive of criminal activity in that Mr. Deck was driving his car with its lights off although it was late at night, as if to avoid detection, and Mr. Deck immediately leaned down toward the passenger side of the vehicle when the officer shined his light on him. *Id.* at 535. This Court held that these circumstances corroborated the anonymous tip and provided grounds for reasonable suspicion to search the car, in which they found a weapon hidden under the front seat. *Id.* at 536.

This case is like *Miller* and *Franklin*, not *Deck*. The evidence showed that the police had received an anonymous tip that a person named Terry Reed was possibly drunk and had just left a specific address driving a *red Ford pickup* on *West Fifth Street.* A few minutes later, Officer Lambert saw a *red Mazda truck* on *Main Street,* being driven by a person who he thought resembled Terry Reed, a person known to the officer. Officer Lambert followed the red Mazda truck. It did not weave or otherwise show indications that it was being driven by an intoxicated driver, as the anonymous tip had stated was the case. Neither did the red Mazda violate any traffic law, nor did the driver otherwise act in a criminal manner.

At this point, the anonymous tip relayed by dispatch was not corroborated by other evidence "suggestive of criminal activity." *Deck,* 994 S.W.2d at 536. The driver did not appear inebriated, the truck was a different make than the one in the tip, it was on a different street and no traffic infraction was observed. While Mr. Grayson's truck also was red, there are countless red trucks of all makes and models operating on the roads and highways of this state. The mere fact that Mr. Grayson was driving a red truck, without more, did not provide a basis for reasonable suspicion to stop his vehicle. Nothing about the circumstances of Mr. Grayson's driving were otherwise suggestive of criminal activity so as to give rise to an articulable basis to pull him over. Officer Lambert had no reasonable basis to detain Mr. Grayson. The stop was unjustified.

Nonetheless, Officer Lambert pulled over Mr. Grayson's vehicle because he thought the driver resembled Mr. Reed. Even were Officer Lambert's belief that the driver might resemble Mr. Reed sufficient for an initial investigatory stop at this point, despite the lack of corroboration of any facts in the anonymous tip and despite the failure to conduct any other investigation, the stop should have ended as soon as Officer Lambert walked up to the driver's side window and saw that the driver of the red Mazda was Matthew Grayson, whom he knew by sight, not Terry Reed.

"An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). " 'If the detention extends beyond the time reasonably necessary to effect its initial purpose, the sei-

---

**3.** Although the tipster in *Deck* was not anonymous, because the record did not show whether the police had any basis to gauge his reliability, this Court analyzed the issue as if the tipster were anonymous. *Id.*

zure may lose its lawful character unless a new factual predicate for reasonable suspicion is found during the period of lawful seizure.' " *State v. Slavin*, 944 S.W.2d 314, 317–18 (Mo.App.1997), *quoting, State v. Stevens*, 845 S.W.2d 124, 128 (Mo.App. 1993).

Officer Lambert did not claim that after the stop a new factual predicate for reasonable suspicion developed that justified continued detention. At the point Officer Lambert saw the truck's driver was Mr. Grayson and not Terry Reed, all plausible suspicion on which to premise continuing the traffic stop was dispelled completely. In fact, Officer Lambert told Mr. Grayson that he was not the person for whom the officer was looking. Yet the officer chose to continue to detain Mr. Grayson and took his driver's license to check for warrants. He did so not because he had any information that there was a warrant but because he knew Mr. Grayson had been arrested in the past and decided to check to see if he might have a warrant again.

■ The State suggests, citing *State v. Hawkins*, 137 S.W.3d 549 (Mo.App. 2004), that Officer Lambert's knowledge of Mr. Grayson's criminal history could have provided reasonable suspicion for the prolonged stop. The State dramatically misreads *Hawkins*. While past criminal activity can be *one* factor in the reasonable suspicion analysis, Hawkins makes clear that " 'knowledge of a person's prior criminal involvement (to say nothing of a mere arrest) is alone insufficient to give rise to the requisite reasonable suspicion.' " *Id.* at 558, *quoting, United States v. Sandoval*, 29 F.3d 537, 542 (10th Cir. 1994). Criminal history "cannot form the sole basis to determine reasonable suspi-

cion to support detention." *State v. Lee*, 265 Neb. 663, 658 N.W.2d 669, 679 (2003). *See also Reed v. Roylston*, 22 Ariz.App. 118, 524 P.2d 513, 516 (1974) ("We do not believe that the information furnished to the officers concerning petitioner's prior convictions of carrying concealed weapons provided such reasonable grounds [for a *Terry* stop]"); *State v. Collins*, 479 A.2d 344, 346 (Me.1984) ("an investigative stop cannot be made merely because the person has a criminal record").

Here, all Officer Lambert had was a hunch that because Mr. Grayson had been arrested in the past, there might be a warrant for him. A mere hunch does not provide a basis for commencing or prolonging an unlawful detention. *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) ("an officer's reliance on a mere 'hunch' is insufficient to justify a stop"); *See also State v. Abeln*, 136 S.W.3d 803, 813 (Mo.App. 2004) (court properly suppressed evidence where trooper "was, at most, acting upon a hunch when he stopped Respondent's truck and did not have a reasonable suspicion, supported by articulable facts, that a criminal activity was taking place when he stopped Respondent's truck"). Officer Lambert's detention of Mr. Grayson was an unreasonable seizure.[4]

*B. The Evidence Should have been Suppressed*

■ The normal rule is that "all evidence obtained by searches and seizures in violation of the Constitution is ... inadmissible in state court." *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Application of this exclusionary rule extends beyond the direct product

4. The instant case is distinguishable from *State v. Waldrup*, 331 S.W.3d 668 (Mo. banc 2011), in which there was no unreasonable seizure because the police had a lawful basis for the initial stop and had continued concern about the presence of a weapon that justified prolonging the defendant's stop for the officers' safety.

of a constitutional illegality. It also requires exclusion of the "fruit of the poisonous tree," that is, "evidence discovered and later found to be derivative of a Fourth Amendment violation." *Miller*, 894 S.W.2d at 654. Although this exclusionary principle is driven by dual "considerations of deterrence and of judicial integrity," *Brown v. Illinois*, 422 U.S. 590, 600, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), the deterrence rationale is paramount: "The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

But the exclusionary rule is not absolute. Once it is determined that, as here, the illegality is the "but for" cause of obtaining the evidence, the evidence may nevertheless be admissible if the connection between the illegality and acquisition of the evidence is sufficiently remote. As the Supreme Court has stated the rule:

> We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question is such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'

*Nix v. Williams*, 467 U.S. 431, 442, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), *quoting, Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Here, the State recognizes that, assuming the detention of Mr. Grayson was unreasonable either initially or after the officer confirmed that Mr. Grayson was not Mr.

Reed, then the evidence should have been excluded if the taint of the original illegality was not purged. But the State argues that the taint was purged under "the attenuation doctrine."

The attenuation doctrine provides that when police derive evidence from an initial illegality, the evidence still may be admitted at trial if the connection between the evidence and the constitutional violation was "so attenuated as to dissipate the taint." *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939). Here, the State argues, the fact that Officer Lambert learned before arresting Mr. Grayson that he had an outstanding municipal warrant and arrested him on that warrant automatically attenuated the connection and made the exclusionary rule inapplicable.

But, in a number of prior cases, Missouri courts have applied the exclusionary rule despite the discovery of an arrest warrant after an improper stop. *See, e.g., State v. Dixon*, 218 S.W.3d 14 (Mo.App. 2007) (evidence must be excluded when officer learned of a warrant prior to actually effectuating the arrest, when the officer would not have been in a position to do so absent the illegal seizure of the defendant); *State v. Taber*, 73 S.W.3d 699 (Mo.App. 2002) (same). Indeed, the United States Supreme Court has held that three factors must be considered in evaluating attenuation: (1) the temporal proximity of the illegality and the acquisition of the derivative evidence; (2) the presence of intervening circumstances; and (3) the flagrancy of the official misconduct. *Brown*, 422 U.S. at 603–04, 95 S.Ct. 2254; *see also, Miller*, 894 S.W.2d at 655.

The existence of the warrant was an intervening circumstance. Whether that circumstance is sufficient to attenuate the taint cannot be determined without considering the strength of the other two factors,

however—that is, the temporal proximity of the illegality and the flagrancy of the misconduct.[5]

Here, the temporal proximity of the illegal seizure to the arrest and discovery of the methamphetamine was immediate—Officer Lambert pulled over Mr. Grayson based on less than reasonable suspicion, detained him based on a hunch, discovered the outstanding warrant, immediately arrested him and brought him to the station, and found the methamphetamine in the back of the patrol car. This factor favors exclusion.

The nature of Officer Lambert's misconduct also favors exclusion. He engaged in the very type of misconduct that the exclusionary rule was designed to prevent. As discussed at length above, Mr. Grayson's detention was unreasonable from its inception because the stop was not supported by articulable facts sufficient to constitute reasonable suspicion. Further, Officer Lambert subjectively recognized at the point he approached the red Mazda truck and saw that neither the truck, the person nor the conduct matched the tip that he had no basis for continuing the detention of Mr. Grayson but detained him anyway exclusively based on a hunch—Officer Lambert "had known [Mr. Grayson] for a lot of years" and "knew that a lot of times there were warrants for him." It is plain from his testimony that Officer Lambert prolonged the encounter with Mr. Grayson "in the hope that something might turn up," a purpose that the Supreme Court has condemned. *Brown*, 422 U.S. at 605, 95 S.Ct. 2254. Such a fishing expedition is precisely the sort of overreaching police behavior that the exclusionary rule is intended to deter. *United States v. Jefferson*, 906 F.2d 346, 348, 349 (8th Cir.1990)

(applying exclusionary rule when officer unreasonably detained defendant at highway rest stop so the officer could engage in what he himself called "a fishing expedition"); *State v. Murphy*, 693 S.W.2d 255, 266 (Mo.App.1985) ("It is axiomatic that the Fourth Amendment was never intended to license prosecuting authorities to engage in unbridled 'fishing expeditions' ").

This principle was well-stated in *People v. Mitchell*, 355 Ill.App.3d 1030, 291 Ill. Dec. 786, 824 N.E.2d 642, 644 (2005). In that case, two officers encountered the defendant on the street while he was taking an early morning walk. The officers had no reason to suspect the defendant of anything but stopped and obtained identification from him anyway, then discovered there was an outstanding warrant for his arrest. *Id.*, 291 Ill.Dec. 786, 824 N.E.2d at 644–45. The officers then arrested Mr. Mitchell and seized illegal drugs from his person while executing a search incident to the arrest. *Id.*

*Mitchell* held that the illegal drug evidence was the fruit of an unreasonable seizure and should have been excluded at trial. Applying the *Brown* factors, the court rejected the argument that the arrest pursuant to the warrant attenuated the taint of the illegal seizure. *Id.*, 291 Ill.Dec. 786, 824 N.E.2d at 649–50. In so doing, the court tellingly remarked:

> Where, as here, the sole apparent purpose of the detention is to check for a warrant, there is nothing else to suppress beyond anything relating to an unknown crime that might turn up, if we were to accept the State's position, since discovery of a warrant would justify the seizure of any additional evidence. If nothing were found, no arrest or seizure would occur, and there would be nothing

---

5. To the extent that *State v. Lamaster*, 652 S.W.2d 885 (Mo.App.1983), dispenses with the need to consider these other two factors,

it does not follow the test set out by the Supreme Court and should not be followed.

to suppress. *If we were to adopt the rule that the State advocates, there would be no reason for the police not to stop whomever they please to check for a warrant.* To hold that the discovery of a warrant in this case removed the taint of the illegality would be akin to holding that the substance of a confession obtained by coercion removes the taint of the coercive practices used to obtain it. *Id.*, 291 Ill.Dec. 786, 824 N.E.2d at 650. (emphasis added).

Similarly, in *Taber,* 73 S.W.3d at 707–02, an officer stopped a vehicle because he believed it was missing a necessary front license plate, and only after the stop did he realize the car was licensed in Kansas, which does not require a front license plate. The officer unlawfully continued the detention, however, by asking the driver for her license. *Id.* at 702. Upon checking her identification, he discovered she had an outstanding warrant and arrested her. *Id.* In the subsequent search incident to arrest, the trooper discovered marijuana in her purse. *Id.* *Taber* agreed with the defendant that the trial court should have suppressed the marijuana as fruit of the poisonous tree, stating:

> Evidence is considered fruit of the poisonous tree where its seizure directly results from an illegal search and/or seizure. *Miller,* 894 S.W.2d at 654. Here, in claiming that the evidence sought to be suppressed was fruit of her unlawful seizure, the appellant argues that the trooper would not have known about the outstanding warrant for her arrest, which not only resulted in her arrest, but the search of her purse incident thereto and the seizure of the marijuana, if he had not first obtained her state identification card, which directly resulted from her unlawful seizure.

*Id.* at 707.

As *Dixon* put the matter in approving exclusion of tainted evidence notwithstanding the existence of a warrant discovered after the illegal detention already had occurred:

> Corporal Grissom 'seized' Mr. Dixon before obtaining information that there was an outstanding warrant for Mr. Dixon's arrest. The State concedes that Corporal Grissom did not have reasonable suspicion prior to learning of the outstanding warrant to justify a seizure. Accordingly, the evidence obtained as a result of the illegal seizure must be suppressed as 'fruit of the poisonous tree.'

218 S.W.3d at 22.

The State is incorrect in its suggestion that the Supreme Court made it easier to show that the taint of illegal conduct was purged in *Hudson v. Michigan,* 547 U.S. 586, 592, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). In *Hudson,* the police failed to "knock and announce" themselves properly before entering a home while executing a valid search warrant. *Id.* at 588, 126 S.Ct. 2159. The Supreme Court noted that the failure to knock and announce was unconnected to the discovery of evidence inside the house; indeed, it was not even a "but for" cause of such discovery as the police had a warrant and discovered the evidence as a result of the warrant, not as a result of the violation of the knock-and-announce rule. *Id.* at 592, 126 S.Ct. 2159. Further, the purpose of the knock-and-announce rule is to avoid alarming those inside and allow them either to open the door or to prepare for police entry so as to minimize the risk of violence and protect property, not to prevent illegal searches and seizures. *Id.* at 594, 126 S.Ct. 2159. For these reasons, the Supreme Court concluded in Hudson that "the interest protected by the constitutional guarantee that has been violated [i.e., the "knock and announce" rule] would not be served by suppression of the evidence obtained." *Id.* at 593, 126 S.Ct. 2159.

But, as Justice Kennedy noted in his concurring opinion as the fifth member of the *Hudson* majority, "[t]oday's decision determines only that in the specific context of the knock-and-announce requirement, a violation is not sufficiently related to the later discovery of evidence to justify suppression." *Hudson*, 547 U.S. at 603, 126 S.Ct. 2159 (Kennedy, J., concurring). *Hudson* did not change the attenuation doctrine, it just found the reason for the exclusionary rule inapplicable to the "knock and announce" context.

By contrast, as discussed above, the interest protected by the Fourth Amendment's prohibition of unreasonable seizures goes to the very heart of and is directly served by application of the exclusionary rule and the deterrence principle that primarily undergirds it. The State's argument that similarly, here, exclusion of the evidence would discourage police from seeking warrants, critically misunderstands the exclusionary principle Mr. Grayson seeks to invoke and the facts of this case. Mr. Grayson does not seek to invalidate his arrest on the existing, valid municipal warrant. Instead, he seeks to prevent the State from admitting the bag of methamphetamine that was found in the backseat of Officer Lambert's patrol car in his separate trial for possession of a controlled substance, as it was discovered only because Mr. Grayson had been seized illegally, notwithstanding the fact that there happened to be a lawful basis to arrest Mr. Grayson after the seizure took place.

■ For similar reasons, the State's attempt to invoke two other exceptions to the "fruit of the poisonous tree" rule—the independent source and inevitable discovery doctrines—is equally unavailing. The Supreme Court discussed the independent source doctrine in *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). In that case, police improperly entered a warehouse and saw illegal materials, but thereafter a lawful warrant (not based on information gleaned from the illegal entry) was issued through which police independently saw and seized the illegal items. *Id.* at 535–36, 108 S.Ct. 2529. As the seizure was independent of the illegality, the exclusionary rule simply did not apply. *Id.* at 537, 108 S.Ct. 2529.

■ Similarly, the inevitable discovery rule, closely related to the independent source doctrine, provides that evidence obtained through unlawful means may be admissible if it can be shown that the same evidence would have been inevitably discovered in a lawful manner. *Nix*, 467 U.S. at 444, 104 S.Ct. 2501 (police could introduce evidence of 10–year–old victim's body where massive search team combing ground nearby inevitably would have discovered body, even though illegal questioning of defendant led to its discovery first).

■ As the United States Supreme Court noted in *Nix*, the purpose of the exclusionary rule is to ensure that "the prosecution is not to be put in a better position than it would have been if no illegality had transpired." *Id.* at 443, 104 S.Ct. 2501. Conversely, the reason for the exceptions is to ensure that "the prosecution is not put in a worse position simply because of some earlier police error or misconduct." *Id.*

Here, Officer Lambert obtained the bag of methamphetamine by taking advantage of the direct chain of events arising from the initial illegality perpetrated on Mr. Grayson. Had Mr. Grayson not been detained while driving innocently and further detained after Officer Lambert ascertained that he was not Terry Reed, then Officer Lambert never would have been in a position to arrest Mr. Grayson and later discover the bag of methamphetamine while inspecting the patrol car's backseat after transporting Mr. Grayson to jail. While the state may have properly arrested Mr. Grayson on the outstanding warrant at

some point,[6] it is not the arrest on the warrant but the conviction of possession of methamphetamine found in the patrol car some time after the arrest that is objected to here. Here, the "prosecution was put in a better position than it would have been if no illegality had transpired." *Nix*, 467 U.S. at 443, 104 S.Ct. 2501. The bag of methamphetamine obtained by Officer Lambert was the fruit of Mr. Grayson's unlawful detention, and the motion to suppress it and any testimony pertaining to it should have been granted.[7]

## IV. CONCLUSION

Mr. Grayson was illegally seized and the bag of methamphetamine and the testimony pertaining to it admitted against Mr. Grayson at trial were the fruits of this illegal seizure. Accordingly, the trial court erred in overruling Mr. Grayson's motion to suppress the bag of methamphetamine. The judgment is reversed, and the cause is remanded.

All concur.

---

6. There was no testimony at the suppression hearing or trial to the effect that Officer Lambert would have run Mr. Grayson's name for warrants anyway rather than continue to search for the drunken driver who was the subject of the tip, had he not continued to detain Mr. Grayson improperly—or even that he would have been in a position to do so without the latter's driver's license. This Court will not indulge in fanciful and unsubstantiated theories as to what Officer Lambert might have done in other circumstances, nor will it presume that Mr. Grayson would be in possession of the same bag of methamphetamine at issue in this case had he been arrested on the warrant at some other date or time.

7. The Court notes that, in a footnote, the State asserts that it is not making an argument that the bag of methamphetamine was admissible

because it had been abandoned by Mr. Grayson in the police car, as it does not need to reach that issue. In any event, the argument would not be meritorious. The law is well-settled that abandonment will be found only when incriminating evidence has been abandoned voluntarily, and that abandonment is not voluntary if it results from an illegal seizure. *See, e.g., United States v. Stephens,* 206 F.3d 914, 917 (9th Cir.2000) ("an abandonment must be voluntary, and an abandonment that results from fourth amendment violations cannot be voluntary"); *United States v. Austin,* 66 F.3d 1115, 1118 (10th Cir.1995) (same); *United States v. Segars,* 31 F.3d 655, 658 (8th Cir.1994) ("abandonment cannot be the product of unlawful police misconduct"); *State v. Solt,* 48 S.W.3d 677, 682 (Mo.App. 2001) (same).