

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99531 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Montgomery County |
| v. | ) | |
| | ) | |
| CHRIS EDWARD REED, | ) | Honorable Wesley C. Dalton |
| | ) | |
| Defendant/Appellant. | ) | Filed: February 11, 2014 |

### Introduction

Chris Edward Reed (Appellant) appeals from the trial court's judgment entered upon a jury verdict convicting him of attempt to manufacture a controlled substance. We affirm.

### Factual and Procedural Background

The State charged Appellant with one count of attempt to manufacture a controlled substance, as a prior and persistent offender.

On July 20, 2012, Appellant filed an Amended Motion to Suppress Evidence seeking to suppress evidence of all items seized during a search of the vehicle in which he was a passenger following a traffic stop, alleging the arresting officer lacked probable cause to detain Appellant beyond the purpose of the initial traffic stop.

At the suppression hearing, the State introduced the testimony of Corporal Chris List (Cpl. List) of the Montgomery County Sheriff's Department. On July 25, 2011, at approximately 2:30 a.m., Cpl. List was driving on Co-op Road in New Florence when the car in front of him swerved into the oncoming traffic lane several times. Cpl. List initiated a traffic stop on the vehicle. As Cpl. List approached the vehicle on foot, he observed the driver hand the passenger a bag and the occupants of the vehicle "moving about and shuffling." Cpl. List testified the driver, Katie Pittman (Pittman), and passenger, Appellant, appeared nervous. While waiting for them to produce identification, Cpl. List saw a bag sitting on the front passenger floorboard. The bag was partially open and Cpl. List noticed it contained coffee filters and aquarium tubing. Cpl. List testified that according to his training and experiences, these items can be used to manufacture methamphetamine. Cpl. List further testified that a farmer's co-op was located on the road and there had been numerous anhydrous ammonia thefts in the area.

After receiving their identification, Cpl. List called the information into dispatch to determine whether Pittman's license was valid and whether she and Appellant had any outstanding wants and warrants. Cpl. List questioned Pittman and Appellant about their destination. Pittman initially stated they were just out driving around but then stated they were visiting friends. When Cpl. List asked them who they were visiting, Appellant told him that it was none of his business.

Cpl. List asked Pittman to exit the vehicle and she complied. Cpl. List asked Pittman for consent to search the vehicle and Pittman consented. When asked on direct examination whether he had gotten a response from dispatch on the license and warrants check, Cpl. List stated, "I believe I was still waiting on it." Cpl. List testified that it was

2

approximately five minutes from the time he stopped the vehicle until the time Pittman consented to the search.

A search of the vehicle revealed a "dugout" in the center console with marijuana. On the front passenger side was a small black bag containing aquarium tubing, coffee filters, a jar, and a box for a bicycle inner tube. Underneath the front passenger's seat was a prescription bottle with Pittman's name on it containing crushed blue pills, which was later determined to contain 16.50 grams of pseudoephedrine. In the backseat, he found a police scanner and a soft-walled cooler containing pliers and lithium batteries. In the trunk he found a bottle of drain cleaner and a gasoline container. These items are commonly used in the production of methamphetamine. Believing that Pittman and Appellant were preparing to manufacture methamphetamine, Cpl. List arrested them.

Cpl. List further testified as follows:

> Q. [By Defense Counsel] Okay. But when you made that decision to search the vehicle, you were no longer dealing with Ms. Pittman with respect to the traffic violation?
> A. I -- I suppose not.
> Q. Okay. And in fact you -- as you already testified, you told Ms. Pittman to get out of the car?
> A. Well, I would have -- wouldn't have ordered her, "Get out of the car;" I would have asked her, "Ma'am, could you step out of the vehicle, please?"
> Q. Okay. But at that time, she was not free to leave?
> A. I suppose she could have asked what for, but, no, I -- I guess I would have --she was not free to leave, no.
> Q. Okay.
> A. Had she protested, she could have, but --
> Q. Now, the reason for the original traffic stop, failing to stay on the right side of the road, was over at that point, wasn't it?
> A. It would have been.
> …
>
> Q. [By the Prosecutor] You've stated in cross-examination that the traffic stop was over when you requested consent to search the vehicle. Do you recall whether when you requested consent to search the vehicle you

3

had heard back from dispatch in regard to Ms. Pittman's driver's license or anything like that?

A. I believe I was still waiting on that information. I actually don't believe I received that back until after -- probably after I began searching the vehicle.

Q. So in regard to your purposes for the initial traffic stop and requesting the information, do you standardly request the information from dispatch before – during a traffic stop -- this information from dispatch during a traffic stop?

A. Yes, sir

Q. And would you generally end a traffic stop before hearing back from dispatch?

A. Absolutely not.

The court denied Appellant's Motion to Suppress and the cause proceeded to trial.

At trial, Cpl. List testified similarly to his pre-trial testimony. Michael Cheek, a task force officer with the East Central Drug Task Force, testified a further search of the vehicle revealed a bicycle inner tube and a garden hose attached together with black electrical tape, both of which can be used in the manufacture of methamphetamine.

The State also called Pittman who testified that on July 24-25, 2011, she drove to Appellant's home in Union, Missouri. Appellant told her he was going to make methamphetamine because he needed rent money. Pittman did not know how to manufacture methamphetamine. She and Appellant each bought one box of cold pills, which Appellant crushed and stored in Pittman's pill bottle. Later that night, they drove to a co-op in a town near Montgomery City to check the surroundings so that Appellant could steal some anhydrous ammonia to manufacture methamphetamine. Pittman testified she consented to the search of her car and stated that before that night, there were no lithium batteries, coffee filters, aquarium tubing or bicycle tubing in her car. Pittman also testified she did not tape the bicycle tubing to the garden hose.

4

On October 4, 2012, the jury found Appellant guilty of the charged offense.   On January 14, 2013, the court sentenced Appellant to 20 years in prison.  This appeal follows.

Point on Appeal

On appeal, Appellant argues the trial court plainly erred in overruling his Amended Motion to Suppress Evidence, and in admitting evidence seized from the car and testimony concerning that evidence because it violated his right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 15 of the Missouri Constitution, in that Cpl. List's continued detention of Pittman and Appellant after the purpose of the original lawful traffic stop was effectuated constituted an illegal seizure.

Standard of Review

The trial court's denial of a motion to suppress is an interlocutory order that is subject to change during trial.  State v. Nylon, 311 S.W.3d 869, 884 (Mo. App. E.D. 2010).  To preserve a claimed error for review, the defendant must make a specific objection to the evidence when it is offered at trial.  Id.  If the defendant fails to properly object at trial, the claimed error may only be reviewed for plain error.  Id.  Under the plain error standard, we will reverse only when a plain error affecting a substantial right results in manifest injustice or a miscarriage of justice.  Id.; Rule 30.20.[1]  Here, Appellant did not object to the evidence when it was introduced at trial.  As such, Appellant failed to preserve this issue for review and we review only for plain error.

At a hearing on a motion to suppress, the State has the burden of proving by a preponderance of the evidence that the motion should be overruled.  State v. Grayson,

_____

[1] All rule references are to Mo. R. Crim. P. 2012, unless otherwise indicated.

5

336 S.W.3d 138, 142 (Mo. banc 2011). In reviewing the trial court's determination, this Court considers the evidence presented both at the pre-trial hearing and at trial to determine whether the court's ruling is supported by sufficient evidence. Id. We view the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling. State v. Mahsman, 157 S.W.3d 245, 248 (Mo. App. E.D. 2004). We defer to the trial court's credibility determinations and factual findings but review legal determinations of reasonable suspicion and probable cause *de novo*. Grayson, 336 S.W.3d at 142.

Discussion

The Fourth Amendment of the United States Constitution protects an individual from unreasonable searches and seizures. U.S. Const. amend. IV; State v. Adams, 51 S.W.3d 94, 98 (Mo. App. E.D. 2001). The Constitution of Missouri provides coextensive protection to the United States Constitution. Mo. Const. art. I, §15; Adams, 51 S.W.3d at 98.

"A routine traffic stop based on the violation of state traffic laws is a justifiable seizure under the Fourth Amendment." State v. Barks, 128 S.W.3d 513, 516 (Mo. banc 2004). "'[S]o long as the police are doing no more than they are legally permitted and objectively authorized to do, [the resulting stop or] arrest is constitutional.'" Id. quoting State v. Slavin, 944 S.W.2d 314, 317 (Mo. App. W.D. 1997). "The detention may only last for the time necessary for the officer to conduct a reasonable investigation of the traffic violation[.]" Barks, 128 S.W.3d at 516.

Appellant does not contest the lawfulness of the initial traffic stop but instead asserts that Cpl. List continued to detain Pittman and Appellant and obtained consent to

6

search the vehicle after the purposes of the traffic stop had been completed. Appellant contends the evidence seized during the search is tainted because it was found during the subsequent illegal detention of the occupants after the traffic stop was complete.

Generally, warrantless seizures are unreasonable and unconstitutional. State v. Norfolk, 366 S.W.3d 528, 533 (Mo. banc 2012). However, an officer may conduct a brief investigative detention of an individual if the officer has a reasonable suspicion, based on specific and articulable facts, that illegal activity has occurred or is occurring. Id., quoting Terry v. Ohio, 392 U.S. 1, 21 (1968).

> In determining whether the seizure and search were unreasonable, a court must determine whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. In evaluating reasonable suspicion, courts must determine if the content of the information possessed by the police and its degree of reliability is sufficient to create a reasonable suspicion of criminal activity.

Norfolk, 366 S.W.3d 528, 533-34.

Police officers may use all of the information available to them when forming a particularized and objective basis for suspecting criminal activity. Id. at 534. "'This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Id. at 534 quoting State v. Hawkins, 137 S.W.3d 549, 558–59 (Mo. App. W.D. 2004).

Here, Cpl. List's testimony demonstrates that he did not illegally detain Pittman and Appellant following the traffic stop. Cpl. List testified he believed he was still waiting on a response from dispatch regarding the check on Pittman and Appellant when he sought consent to search the vehicle and that a traffic stop is not complete until he

7

receives such response. Appellant contends that Cpl. List's testimony during cross-examination that the reason for the original traffic stop was over by the time he requested Pittman to exit the vehicle leads to the conclusion that Cpl. List's actions amounted to an unlawful seizure. We disagree.

Although Cpl. List provided some conflicting testimony as to whether the traffic stop was complete when he asked Pittman to exit the car and sought consent to conduct a search, on appeal this Court views the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling. See Mahsman, 157 S.W.3d at 248. Cpl. List repeatedly testified that he believed he was still waiting on a response from dispatch and, therefore, the traffic stop was not complete when he requested Pittman's consent to search to vehicle. This testimony supports a finding that Cpl. List did not detain Pittman or Appellant beyond the time necessary for him to conduct a reasonable investigation of the traffic violation when he requested Pittman to exit the vehicle or for consent to conduct a search.

Furthermore, assuming *arguendo* that Cpl. List's request to search the vehicle did occur after the purpose of the initial traffic stop had been completed, his testimony demonstrates that shortly after pulling Pittman over for a traffic violation and before he requested Pittman's consent to search the vehicle, he had a reasonable suspicion that Pittman and Appellant were preparing to manufacture methamphetamine. At 2:30 a.m., Pittman and Appellant were in an area where there had been numerous anhydrous ammonia thefts. They did not live nearby and gave conflicting and evasive answers to Cpl. List's inquiries as to why they were in the region. Cpl. List testified that Pittman and Appellant appeared nervous. While waiting for them to produce their identifications,

8

Cpl. List saw a partially open bag sitting on the floorboard containing coffee filters and aquarium tubing which Cpl. List knew, from his training and experience, could be used to manufacture methamphetamine.

Based on these facts, Cpl. List had a new, independent suspicion that Pittman and Appellant were engaged in illegal activity, specifically attempting to manufacture methamphetamine, justifying a brief investigative detention beyond the scope of the initial traffic stop.

The State demonstrated that the evidence seized from the vehicle was obtained during a lawful traffic stop and upon a reasonable suspicion that the occupants of the vehicle were engaged in illegal activity. The trial court did not plainly err in overruling Appellant's Amended Motion to Suppress Evidence. Appellant's point on appeal is denied.

## Conclusion

The judgment and sentence of the trial court are affirmed.

_Sherri B. Sullivan_
Sherri B. Sullivan, J.

Lawrence E. Mooney, P.J., and
Robert G. Dowd, Jr., J., concur.

9