STATE of Missouri, Appellant,

v.

Victor SANDERS, Respondent.

No. WD 57811.

Missouri Court of Appeals,
Western District.

April 25, 2000.

Terrence M. Messonnier, Asst. Pros. Atty., Lexington, for appellant.

Horton Jay Lance, Kansas City, for respondent.

Before: JOSEPH M. ELLIS, Presiding Justice, PAUL M. SPINDEN, Judge, and THOMAS H. NEWTON, Judge

PAUL M. SPINDEN, Judge.

The state charged Victor Sanders with possessing a controlled substance. Sanders responded to the state's charges by filing a motion to suppress the evidence that officers obtained while searching him and his vehicle. The circuit court sustained Sanders' motion to suppress, and

the state filed this interlocutory appeal. Because the circuit court refused to resolve the factual issues before it and erroneously applied the wrong burden of proof, we reverse and remand to the circuit court for further proceedings.

At the suppression hearing, the state presented evidence that Jeremy Fahrmeier, deputy to the Lafayette County sheriff, stopped a vehicle driven by Sanders to investigate a speed limit infraction and the vehicle's having only one headlight lit. After obtaining identification from Sanders, Fahrmeier returned to his patrol car and asked his dispatcher to check Sanders' record. Fahrmeier said that he learned through the record check that Sanders had "prior relations with law enforcement" and a "history of possibly being violent." While Fahrmeier wrote the summons, Sergeant David Hanaway of the Lafayette County Sheriff's Department arrived to assist Fahrmeier. According to Fahrmeier, Hanaway told him that Sanders had previously been caught with drugs.

Fahrmeier said that when he returned to Sanders' vehicle, he asked Sanders to get out of his vehicle. Fahrmeier said that they walked to the front of Sanders' vehicle and that there he gave Sanders a summons for speeding and returned Sanders' driving license. Fahrmeier said that he then asked Sanders whether he had any illegal items in his vehicle and whether Sanders would consent to his searching the vehicle. Fahrmeier and Hanaway said that Sanders consented to a search. The officers found drug paraphernalia that appeared to have been recently used.

Fahrmeier arrested Sanders and handcuffed him. Fahrmeier said that Sanders asked him to put his driving license in his wallet. Sanders had put the license on the vehicle's hood. Fahrmeier said that as he placed Sanders' license in Sanders' wallet he discovered a bag containing a powdery substance which appeared to him to be methamphetamine.

Sanders' version differed. He said that when Fahrmeier returned to his vehicle, Fahrmeier asked him to get out of his vehicle and immediately handcuffed him. Sanders said that Fahrmeier asked him for permission to search the vehicle but that he said no. Sanders also said that he never asked Fahrmeier to put his driving license in his wallet and that Fahrmeier seized his wallet while patting him down. Sanders admitted that he possessed methamphetamine in his wallet.

The state's evidence showed that Fahrmeier's initial report of the incident did not explain the basis for his searching Sanders' vehicle. Fahrmeier did include in his report his first question to Sanders—whether he had any illegal items—but did not include the second question—whether he consented to a search of his vehicle. When the prosecutor's office asked Fahrmeier about this omission, Fahrmeier prepared a supplemental report stating that Sanders consented to the search. Fahrmeier said that the omission was a "simple mistake." He said that it was one of his first vehicle stops during the first week of his patrolling alone.

After hearing the evidence, the circuit court made a lengthy oral ruling granting Sanders' motion to suppress. The circuit court noted the conflicts in Fahrmeier's and Sanders' versions of what happened but decided not to resolve the credibility issue. Instead, it based its decision on a need to protect the public's "confidence in the workings of our law enforcement and law enforcement community." In declaring its decision to suppress the evidence, the circuit court said, "[I]f I'm to find the matters beyond a reasonable doubt and do my job as a gate keeper in this system, I can't let this one go by."

 Generally, when reviewing a circuit court's order sustaining a motion to suppress, we consider all facts and reasonable inferences in the light most favorable to the challenged order, and we defer to the circuit court's determination as to the credibility of witnesses. *State v. Young,* 991 S.W.2d 173, 176 (Mo.App.1999). When

the circuit court, however, makes gratuitous oral statements on the record, we may consider those statements in determining whether the circuit court erroneously applied or declared the law. *Colombo v. Buford*, 935 S.W.2d 690, 693 (Mo.App. 1996); *In the Interest of L.W.F.*, 818 S.W.2d 727, 733 (Mo.App.1991). We will reverse the circuit court's ruling on a motion to suppress only if its decision is clearly erroneous. *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo. banc 1990).

The circuit court's ruling was clearly erroneous. It declined to make credibility determinations that were necessary in this case to making a proper determination, and it did not apply the appropriate standard of proof, imposing on the state a burden of showing consent beyond a reasonable doubt rather than by a preponderance of the evidence. *State v. Brown*, 814 S.W.2d 304, 307 (Mo.App.1991); § 542.296.6, RSMo 1994.

■ The circuit court announced to the parties that it would not "offer an opinion as to whether or not [it] believe[d] one person more than the other person in this case" but went on to grant the motion to suppress. Without making a determination of whose version to believe—Fahrmeier's or Sanders'—the circuit court did not have a proper basis for making its ruling. It appears to have granted the motion to suppress to "encourage [police] work to be done right or appropriately or properly." This was not a proper ground for the ruling.

■ The circuit court told the state that it "very likely" would have resolved doubts of credibility in its favor because it did not want "a courtroom of defendants coming in here and telling [it that they] didn't con-

sent," but that it had a problem with the way Fahrmeier prepared his report. The court then concluded that "there were just too many problems with the thing from the start to the finish" to sustain the public's confidence in the judiciary and law enforcement. The circuit court's duty, however, was to resolve any issues of credibility before ruling on the motion to suppress and to base its ruling on the facts as it perceived them to be true. The circuit court did not fulfill its obligation.

Sanders contends that the circuit court found that the traffic stop had ended, so Fahrmeier had no basis to continue the stop or to ask for consent to search the vehicle. *See State v. Woolfolk*, 3 S.W.3d 823 (Mo.App.1999); *State v. Morr*, 811 S.W.2d 794 (Mo.App.1991). Because the circuit court did not resolve the credibility issues, we have no basis to judge the validity of Sanders' argument.

■ Moreover, the court erred in concluding that it had to find the matters beyond a reasonable doubt.[1] A search conducted without a warrant but with proper consent is valid under the Fourth Amendment of the United States Constitution. *Brown*, 814 S.W.2d at 307. The state bore the burden of showing by a preponderance of the evidence that the consent was voluntarily given. *Id.; United States v. Matlock*, 415 U.S. 164, 177, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The issue before the circuit court, therefore, was whether the state proved by a preponderance of the evidence—not beyond a reasonable doubt—that Sanders voluntarily consented to the search. The circuit court applied the wrong standard of proof.

Because the circuit court did not resolve the factual issues and applied the wrong

---

1. Sanders contends that the circuit court was simultaneously deciding the suppression issue and considering the effect of his ruling on the ultimate guilt issue, and was, therefore, acknowledging that without the physical evidence the state would fail to prove its case beyond a reasonable doubt. We disagree. The circuit court specifically told the parties

that it was only considering the motion to suppress. The court said, "I have to rule, as I understand it, the motion to suppress first, and give the [s]tate the option of doing what they want to do, to include a dismissal or requesting the [c]ourt rule the case, or requesting an appeal, whatever you want to do."

standard of proof, we reverse and remand to the circuit court for further proceedings.

JOSEPH M. ELLIS, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.