

# In the Missouri Court of Appeals
## Eastern District

DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99548 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | 1122-CR01237-01 |
| | ) | |
| TERRY NEBBITT, | ) | Honorable Rex M. Burlison |
| | ) | |
| Respondent. | ) | FILED: July 29, 2014 |

### *Introduction*

Terry Nebbitt (Defendant) appeals the judgment of the Circuit Court of the City of St. Louis convicting him of felony possession of a controlled substance and misdemeanor possession of drug paraphernalia. In his two points on appeal, Defendant claims the trial court erred in refusing to suppress physical evidence. In Point One, Defendant contends the trial court erred in overruling his motion to suppress and admitting into evidence the drugs and drug paraphernalia because police officers conducted a warrantless search of his apartment and the seizure of the drug paraphernalia was not justified by the plain view doctrine. In Point Two, Defendant asserts that the trial court erred in overruling the motion to suppress and admitting into evidence the drugs and paraphernalia because police officers had neither reasonable suspicion nor probable cause to detain Defendant. We affirm in part and remand in part.

1

## Factual and Procedural Background

On July 12, 2011, an "anonymous tipster" informed the St. Louis Metropolitan Police Department that "a short black male" named Terry was selling illegal narcotics in apartment 7007 of the Warwood Apartments. Detective Gary Burgess and Officer Mark Seper decided to investigate by performing a "knock and talk." Defendant answered the door for the officers, who entered Defendant's apartment and seized from the coffee table in his living room: a cut-off soda can bottom; a ceramic pipe; a plastic straw; a hypodermic needle; a "scorched metal spoon with [] off-white chunks";[1] and empty pill capsules. From the Defendant's living room, the police officers noticed more paraphernalia in the bedroom and recovered from the bed five digital scales and a "medicine container." The officers also seized a .07-gram rock of crack cocaine, which fell from Defendant's pocket.

The State charged Defendant as a prior drug offender with felony possession of a controlled substance (Count I) and misdemeanor possession of drug paraphernalia (Count II). Prior to trial, Defendant filed a *pro se* motion to suppress the evidence of drugs and drug paraphernalia seized by the officers on the grounds that the officers illegally "detained" him because they failed to corroborate the anonymous tip with "independent police observation." Defense counsel did not call up the *pro se* motion for a hearing. Instead, defense counsel filed a motion to suppress statements and a motion to suppress evidence.[2] In the motion to suppress evidence, counsel asserted that the evidence was "obtained pursuant to an unlawful search and seizure by members of law enforcement"; the search "was conducted without a warrant, without

---

[1] At trial, the State presented evidence that the spoon contained .07 grams of cocaine base.
[2] On appeal, Defendant challenges only the trial court's handling of his motion to suppress physical evidence. Defendant does not challenge the trial court's approach to his motion to suppress statements.

2

probable cause"; and the "items seized were not in plain view and the seizing officers were not at a place the officers had a legal right to be."

The trial court conducted a pre-trial suppression hearing on the morning of trial and received testimony as to whether the drug paraphernalia on Defendant's coffee table was in plain view of Defendant's apartment door. The State presented Officer Seper, who testified that he observed "illegal drug paraphernalia" from his position "[o]utside the [apartment] door." Officer Seper stated that, after he observed the drug paraphernalia, he asked Defendant to step outside the apartment to provide his pedigree information. According to Officer Seper, while Defendant was in the hallway, he removed his right hand from his pants pocket "and discarded an off-white chunk to the ground," which appeared to be crack cocaine. Officer Seper placed Defendant under arrest then entered Defendant's apartment and retrieved the drug paraphernalia.

On cross-examination, defense counsel asked Officer Seper whether: Defendant informed the officers that he did not wish to speak to them; Defendant attempted to close the door; and Officer Seper pushed the door open. Officer Seper answered each question, "I don't recall." Officer Seper denied entering Defendant's apartment prior to arresting Defendant in the hallway.

The defense called Stephanie Hugger, the public defender who represented Defendant at his preliminary hearing. Ms. Hugger testified that, at the preliminary hearing, Officer Seper stated that, when Defendant opened the door, the drugs and paraphernalia "basically [] were in plain view and so they walked in and seized the items" and "after they arrested [Defendant], they said something fell out of his pocket, which they seized because it looked like a controlled substance." Ms. Hugger also asked Officer Seper whether there was "a wall inside the front door," and Officer Seper "said no, there was no wall, the door was open and they could see right

3

into the, I believe living area where there was a table." At the preliminary hearing, Ms. Hugger inquired "more than once . . . about a wall being in front of the door," and Officer Seper maintained "that there was no wall . . . . [H]e could see the table very clearly."

At the suppression hearing, the defense also presented the testimony of Tamara Walker, an investigator for the public defender's office. Ms. Walker testified that she visited and photographed Defendant's apartment about one year after his arrest and stated that "[w]hen you first open the [apartment] door, there's a wall right in front of you." Ms. Walker identified various photographs that she took of the apartment, which showed that "when you open the front door, the only thing you see is the wall in front of you, okay, with the return duct on it." Ms. Walker explained that, "just standing outside the threshold in the hallway," one cannot see Defendant's living room and "[y]ou have to actually step in and step to your left in order to see the living room."

Defendant also testified at the suppression hearing and recalled that Officer Seper and Det. Burgess knocked on his door and informed him that "they wanted to search [his] apartment for guns and drugs." Defendant stated that he opened the door and asked the police officers whether they had a search warrant, and the officers "told [him] that by living in public housing they didn't need a search warrant." Defendant recounted that he attempted to close the door, but the officers "put the[ir] foot in the door and their arm to my door . . . . And they wouldn't allow me to shut the door . . . ." Defendant stated that, at some point, the officers entered Defendant's apartment without his consent, handcuffed Defendant and another man who was in Defendant's apartment, and "just took control." Defendant also identified the photographs that Ms. Walker took of his apartment. At the suppression hearing, defense counsel did not argue that Defendant's detention was unsupported by reasonable suspicion.

Shortly before the conclusion of the evidence, the trial court commented, as follows:

> [COURT]: Counselor, tell me where this is, *why the dispute whether [sic] can be seen or not be seen, isn't that a question of fact that I'm not going to be able to determine, that's got to be given to the jury any way [sic]?*
> [PROSECUTOR]: That would be my argument, yes.
> [COURT]: All right. Then let's proceed. We understand there may be a difference of opinion as to what you can see from the hallway, *but I can't say as a matter of law the officer's right or the defendant's right or the investigator's right.* So let's proceed. . . .

(emphasis added).

At the conclusion of testimony, the trial court heard arguments of counsel. Defense counsel argued that Officer Seper "was standing inside [her] client's apartment" when he observed the drugs and paraphernalia and that:

> [h]e had no legal authority to be inside the house, and once he was standing outside, if a person believes once he's standing outside he's in plain view, at that point he should have gotten consent, either from my client or he could have or should have gotten a search warrant, he didn't do either.

The trial court ruled as followed:

> The Court finds that this, that there are certain questions of fact which have to be determined by the jury. And that would be whether or not the officer had the ability to, in plain view, see what was on the coffee table. That's a fact that this Court cannot make a ruling [sic] as a matter of law.
> The officer was, what is a fact [sic] is not in dispute is the officer was in a position at the doorway. And that position was lawful. And whether or not the Court believes that the case law is clear that certain exceptions to the need for search warrant exist, one of them is whether or not the item that's, the items that are attempting to be suppressed are within the plain view exception to the need for a search warrant.
> And with the evidence presented, *the Court cannot determine as a matter of law whether or not the officer could or could not see what was on that coffee table,* and that the, those being the items that the defendant wishes to suppress.
> So based on the - -and the Court believes that this is a question of fact for the jury to determine. So, based on that, the Court will overview [sic] the defendant's motion to suppress.

(emphasis added).

At trial, the State presented as witnesses Officer Seper, Det. Burgess, and a criminalist from the St. Louis Metropolitan Police Department crime lab who analyzed the crack cocaine and spoon seized by the officers. Defense counsel objected to "any mention of drug paraphernalia, drugs, or any statements that [Defendant] has made." Defense counsel based her objection upon the constitutional grounds raised in Defendant's "previously filed motion to suppress the evidence and statements."[3] The trial court granted defense counsel's request for a continuing objection. Defendant called Ms. Hugger and Ms. Walker and, based on their testimony, argued that the police officers lacked credibility.

The jury found Defendant guilty on Count I, felony possession of a controlled substance, and Count II, misdemeanor possession of drug paraphernalia. The trial court sentenced Defendant to concurrent terms of one-year confinement on Count II and fifteen years' imprisonment on Count I pursuant to the institutional treatment program set forth in Section 559.115.[4] Defendant appeals.

### Standard of Review

When reviewing the trial court's ruling on a motion to suppress, we consider the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling. State v. Grayson, 336 S.W.3d 138, 142 (Mo. banc 2011). We will reverse the trial court's ruling on a motion to suppress only if its decision is clearly erroneous. State v. Goff, 129 S.W.3d 857, 862 (Mo. banc 2004). In making

---

[3] Defense counsel further stated: "I believe that it violates my client's Fourth Amendment rights to be free of illegal search and seizure, and ask it be a continuing objection."

[4] The trial court granted Defendant credit for time served and announced that Defendant's sentence on Count II "has been served and satisfied. As to Count I, the trial court later found that Defendant successfully completed the drug treatment program, ordered Defendant released from prison, suspended Defendant's sentence, and placed Defendant on probation for a period of four years.

this determination, we defer to the trial court's factual findings and credibility determinations, and we consider all evidence and reasonable inferences in the light most favorable to the trial court's ruling. State v. Spradling, 413 S.W.3d 670, 672 (Mo.App.S.D. 2012). "The legal determination of whether reasonable suspicion existed is made *de novo.*" Goff, 129 S.W.3d at 862 (citing Onelas v. U.S., 517 U.S. 690, 699 (1996)).

## *Discussion*

In Point One, Defendant claims the trial court erred in overruling his motion to suppress evidence and admitting at trial the drugs and drug paraphernalia found in his apartment because "the officers conducted a warrantless search of [Defendant's] apartment, and the paraphernalia was not in 'plain view' and there were no other exigent circumstances to justify the search." Although not included in his point relied on, Defendant contends in the argument section of his brief that the trial court's ruling on his motion to suppress evidence was clearly erroneous because, among other reasons, the trial court misconceived its obligations under Mo. Rev. Stat. § 542.296.6. The State addresses Defendant's argument in its response, asserting that the trial court "impliedly" made the necessary factual findings and credibility determinations during trial.[5] Before we consider if the trial court erred in allegedly overruling the motion to suppress evidence, we determine whether, based on the record, the trial court made the factual findings and legal determinations required by Section 542.296.

The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches

---

[5] Although not included in Defendant's point relied on, the argument portion of both briefs sufficiently address the issue on which this appeal turns. We therefore review the contentions made in the argument portion of Defendant's brief *ex gratia.* In re Estate of Lambur, 317 S.W.3d 616, 620 (Mo.App.S.D. 2010).

7

and seizures[.]"[6] U.S. Const. amend. IV; see also State v. Barks, 128 S.W.3d 513, 516 (Mo. banc 2004). "Generally, subject to certain exceptions, warrantless searches and seizures are deemed *per se* unreasonable." State v. Loyd, 338 S.W.3d 863, 865 (Mo.App.W.D. 2011). In the absence of "special circumstances" justifying a warrantless search and seizure, evidence obtained in violation of a defendant's Fourth Amendment rights is not admissible against him or her at trial. State v. Stoebe, 406 S.W.3d 509, 515 (Mo.App.W.D. 2013); see also Mapp v. Ohio, 367 U.S. 643, 655 (1961).

Under Section 542.296.1, "[a] person aggrieved by an unlawful seizure made by an officer . . . may file a motion to suppress the use in evidence of the property or matter seized." Mo. Rev. Stat. § 542.296.1. With respect to a motion to suppress, the State bears both the burden of producing evidence and persuading the trial court, by a preponderance of the evidence, to overrule the motion to suppress. Mo. Rev. Stat. § 542.296.6. The circuit court's duty is "to resolve any issues of credibility before ruling on the motion to suppress and to base its ruling on the facts as it perceived them to be true." State v. Sanders, 16 S.W.3d 349, 351 (Mo.App.W.D. 2000); see also Spradling, 413 S.W.3d at 675.

Here, there is no dispute that Officer Seper and Det. Burgess conducted a warrantless search of Defendant's apartment. Accordingly, at the suppression hearing, the State bore the burden of proving by a preponderance of the evidence that "special circumstances" justified the search. See Stoebe, 406 S.W.3d at 515.

---

[6] The Fourth Amendment's prohibition of unreasonable searches and seizures applies to the states through the due-process clause of the Fourteenth Amendment. State v. Morgan, 366 S.W.3d 565, 584 n.8 (Mo.App.E.D. 2012). "Article I, section 15 of the Missouri Constitution provides the same guarantees against unreasonable search and seizures; thus, the same analysis applies to cases under the Missouri Constitution as under the United States Constitution." State v. Oliver, 293 S.W.3d 437, 442 (Mo. banc 2009).

8

The State relied upon the plain view doctrine to legitimize the officers' search and seizure of the challenged evidence. Under the plain view exception to the warrant requirement, an officer may seize and take custody of evidence of crime observed by the officer in plain view while the officer is in a place where he or she has a right to be. State v. Schneider, 736 S.W.2d 392, 399 (Mo. banc 1987). Pursuant to Section 542.296.6, it was thus incumbent upon the State during the suppression hearing to present evidence to persuade the trial court that, from the police officers' lawful position at the door to Defendant's apartment, the police officers could see the drugs and drug paraphernalia. See Stoebe, 406 S.W.3d at 516.

In considering Defendant's motion to suppress, the trial court found that Officer Seper "was in a position at the doorway" and "that position was lawful." However, the trial court failed to determine the credibility of Officer Seper's testimony that the drugs and paraphernalia on Defendant's coffee table were visible from Defendant's doorway. Rather, the trial court concluded: "[W]ith the evidence presented, the Court cannot determine as a matter of law whether or not the officer could or could not see what was on that coffee table . . . those being the items that the defendant wishes to suppress." Based on its view that the evidence did not provide a basis for a trial court determination about whether the police officers "could or could not see what was on the coffee table," the trial court opted to make no determination and ruled that the jury should make the necessary fact determination. Although the trial court characterized its action as overruling the motion to suppress, it failed to make the necessary underlying factual and credibility determinations. See, e.g., Sanders, 16 S.W.3d at 351.

In addition to failing to resolve the factual and credibility issues, the trial court did not appear to apply the proper burden of proof. Section 542.296.6 places the burden of proof and the risk of nonpersuasion upon the State. We agree with Defendant that the trial court misconceived

9

its role when it stated: "[T]he Court cannot determine as a matter of law whether or not the officer could or could not see what was on that coffee table . . . . [A]nd the Court believes that this is a question of fact for the jury to determine." If, in fact, the trial court meant to conclude that the State's evidence was unpersuasive then, applying the proper burden of proof, it had an obligation to sustain the motion. Instead, the trial court appears to have overruled Defendant's motion to suppress despite the State's failure to persuade it that the police officers could see "what was on" the coffee table from the doorway. As we discuss in more detail below, the trial court's stated refusal to resolve the underlying factual issues and its apparent confusion about the burden of proof require a remand. See, e.g., id.

Recognizing the difficulty posed by the trial court's approach, the State argues that "despite the trial court's initial reluctance to make factual findings or credibility determinations immediately following the suppression hearing . . . the court nevertheless impliedly made those findings later during the course of trial when it denied Defendant's motion for judgment of acquittal" at the close of the State's evidence. In support of its position that the trial court impliedly made the findings necessary to overrule Defendant's motion to suppress, the State relies on the following colloquy from the hearing on Defendant's post-trial motion for judgment of acquittal notwithstanding the verdict or, in the alternative, new trial:

> [DEFENSE COUNSEL]: . . . I believe that the Court erred in its decision to deny my motion to suppress the evidence, and I'd ask that the Court reconsider that at this time.
> And if the evidence in this case had been suppressed, then the judgment of acquittal, I believe, would have been granted at the end of the State's case.
> [COURT]: Okay.
> [DEFENSE COUNSEL]: That's all, your Honor.
> [COURT]: Okay. You didn't want to argue anymore?
> [DEFENSE COUNSEL]: No.

10

Based on this exchange, the State maintains that the trial court "tacitly agreed with defense counsel during the hearing on the motion for new trial that if the court had determined that the evidence should be suppressed, it would have granted Defendant's motion for judgment of acquittal."

We first note that nothing in the transcript suggests that the trial court's "Okay" communicated accord. Based on our review, it appears that the trial court's utterance was simply confirmation that the court had heard defense counsel's statement. Furthermore, the State cites no authority to support the proposition that a trial court impliedly overrules a defendant's pre-trial motion to suppress when it denies the defendant's motion for judgment of acquittal at the close of the State's evidence. To the contrary, our court has repeatedly noted that taking "with the case" a motion to suppress evidence "is permissible, but discouraged." State v. Ingram, 341 S.W.3d 800, 803 (Mo.App.E.D. 2011); see also State v. Avent, No. WD 76395, 2014 WL 1303418, *1 n.2 (Mo.App.W.D. April 1, 2014) ("[W]e strongly discourage the practice of waiting until after the close of evidence to rule on such motions [to suppress evidence]."); State v. Connell, 326 S.W.3d 865, 868 (Mo.App.W.D. 2010) ("[E]videntiary suppression via motion should be ruled upon *before,* not *after,* evidence has been *admitted* at trial.") (emphasis in original). Given our court's disfavor for deferred rulings on motions to suppress evidence, we decline to imply a denial of the motion to suppress from a denial of a motion for judgment of acquittal.

As the State concedes in its brief, "the trial court's refusal to make factual findings immediately after the suppression hearing may require a limited remand." With respect to a limited remand, the Western District's decision in Sanders provides this court guidance. In that case, the State charged the defendant with possession of a controlled substance, and the

11

defendant filed a motion to suppress the evidence on the grounds that he did not consent to the search of his vehicle. Sanders, 16 S.W.3d at 350. The arresting officer and the defendant testified at the suppression hearing. Id. The trial court noted the conflicts in the witnesses' "versions of what happened but decided not to resolve the credibility issue." Id. Instead, the trial court sustained the defendant's motion to suppress, not based upon the evidence before it, but on a perceived need to protect the public's "confidence in the workings of our law enforcement and law enforcement community." Id. The State appealed the trial court's suppression of the evidence, and the Western District reversed and remanded for a credibility determination on the critical issue of whether consent was given. Id. at 351; see also Stoebe, 406 S.W.3d at 516.

Here, as in Sanders, the trial court failed to render the necessary factual and credibility determinations and refused to apply the proper standard of proof. We therefore remand the case to the trial court for a supplemental hearing, if necessary, to determine whether the drugs and paraphernalia were in plain view of the officers from the door to Defendant's apartment. See, e.g., State v. Mitchell, 611 S.W.2d 211, 214 (Mo. banc 1981) (reversing for a supplemental hearing to determine whether the defendant's confession was voluntary or involuntary); State v. Smoot, 363 S.W.3d 108, 113 (Mo.App.E.D. 2011) (same). If the trial court determines, based on the evidence at the suppression hearing, trial, and supplemental hearing, that the evidence was not in plain view and the search and seizure was therefore illegal, the trial court shall set aside the judgment and sentence and grant a new trial without the illegally seized evidence. See Mitchell, 611 S.W.2d at 214. If, on the other hand, the trial court determines that the search and seizure was justified by the plain view doctrine, then it "shall certify the transcript of the hearing and its determination and findings to this court to be made a part of the transcript in the cause for

12

determination and disposition of the appeal upon the record as supplemented." Id. Point One is granted as modified.

In Point Two, Defendant claims the trial court erred in overruling his motion to suppress the evidence because his "detention" was not supported by reasonable suspicion. More specifically, Defendant argues that "the detention was based solely on an anonymous tip" and "no predictive information was corroborated by the officers prior to the detention to impart some degree of reliability to the other allegations made by the tipster." In response, the State asserts that the police officers were not required to corroborate the anonymous tip before conducting a "knock and talk."

As previously discussed, "[s]ubject to only a few specific and well-delineated exceptions, warrantless searches and seizures conducted without probable cause are deemed *per se* unreasonable." State v. Flowers, 420 S.W.3d 579, 581 (Mo.App.S.D. 2013). "One such exception is that an officer may stop a person without a warrant to conduct 'a brief investigative detention if the officer has a reasonable suspicion, based on specific and articulable facts, that illegal activity has occurred or is occurring.'" Id. (quoting State v. Norfolk, 366 S.W.3d 528, 533 (Mo. banc 2012)). "An anonymous tip by itself seldom, if ever, provides reasonable suspicion that a person has committed a crime warranting a Terry-stop."[7] State v. Weddle, 18 S.W.3d 389, 393 (Mo.App.E.D. 2000) (citing Alabama v. White, 496 U.S. 325, 329 (1990)). However, if the police independently corroborate the anonymous tip "it may exhibit sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." Flowers, 420 S.W.3d at 582 (quotation omitted).

---

[7] Terry v. Ohio, 392 U.S. 1 (1968).

13

We first consider whether Defendant preserved for review his claim that the police officers detained him without reasonable suspicion based upon an anonymous and uncorroborated tip. Although Defendant raised this issue in a *pro se* motion to suppress, defense counsel did not raise or argue this issue in her subsequently filed motions to suppress, at the suppression hearing, at trial, or in the motion for new trial.

At the suppression hearing, defense counsel contended, in substance, that the search and seizure was illegal because the drugs and paraphernalia were not in plain view. At trial, defense counsel broadly objected to admission of the evidence on the grounds that "it violates [Defendant's] Fourth Amendment rights to be free of illegal search and seizure[.]" At no time did defense counsel argue to the trial court that Defendant's "detention" was unsupported by reasonable suspicion. See e.g., State v. Smith, 373 S.W.3d 502, 507 n.4 (Mo.App.S.D. 2012).

In his motion for new trial, Defendant contended that "police officers did not have a warrant or consent to enter Defendant's residence or to search it." Defendant further asserted that the plain view doctrine did not provide a basis for the seizure. In addition, Defendant challenged the court's unwillingness to "determine the credibility" of any witness and, in particular, Officer Seper. Defendant focused on the discrepancies in Officer Seper's testimony and stated "the trial court is allowed to and required to determine the credibility of the witness." Defendant did not raise the legitimacy of either a Terry stop or a "knock and talk."

"To properly preserve an objection for appeal, the moving party must make a specific objection at trial asserting the same grounds raised on appeal." State v. Rasheed, 340 S.W.3d 280, 287 (Mo.App.E.D. 2011). In Rasheed, the defendant filed a motion to suppress drug evidence, asserting generally that the evidence was "obtained pursuant to an unlawful search." Id. The defendant also filed a motion to suppress statements, attacking the length and nature of

14

his custody and interrogation. Id. At trial, the defendant repeated his objections "based on the previously filed motions." Id. The trial court admitted the drug evidence and statements, and a jury found Defendant guilty of drug trafficking and possession of a controlled substance. Id. at 283. In his post-trial motion for new trial, the defendant "renewed the same grounds for his objections to the evidence and statements." Id. at 287. On appeal, the defendant argued for the first time that the trial court erred in overruling his motions to suppress evidence and statements because the police officers lacked reasonable suspicion to detain him. Id. This court held that the defendant's motions to suppress, objections at trial, and motion for new trial "were insufficient to preserve for appeal [his] argument that his statements and the evidence should be suppressed because the officers lacked reasonable suspicion to detain [him]." Id.

Like the defendant in Rasheed, Defendant failed to preserve for appeal his claim that his detention was unsupported by reasonable suspicion. The record reveals that Defendant did not argue at the suppression hearing, trial, or in his motion for new trial that the police officers did not have reasonable suspicion to detain him. Accordingly, Defendant's Point Two is subject only to review for plain error. Rule 30.20. "Plain error exists where the alleged error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice occurred." Goff, 129 S.W.3d at 862 (quotation omitted).

The undisputed evidence at the suppression hearing and at trial established that Officer Seper and Det. Burgess investigated the anonymous tip by conducting a "knock and talk." "A 'knock and talk' is employed when law enforcement officers receive information relating to illegal drug activity that they believe has merit but is insufficient to obtain a warrant." State v. Cady, 425 S.W.3d 234, 241 (Mo.App.S.D. 2014) (quoting State v. Cromer, 186 S.W.3d 333, 342 (Mo.App.W.D. 2005)). When conducting a "knock and talk," police officers "go to the

15

referenced location, knock on the door, speak with whomever answers the door, and try to obtain consent to search the premises." Id. "Law enforcement officers are legally permitted to knock on the door of a private residence and seek consent to enter and search without probable cause or a warrant." Id. (quoting Cromer, 186 S.W.3d at 342).

The cases Defendant cites in support of his position do not stand for the proposition that police officers must corroborate the details of an anonymous tip prior to conducting a "knock and talk." Rather, the cases establish that law enforcement officers must corroborate an anonymous tip in order to establish reasonable suspicion to justify an investigative stop. See Florida v. J.L., 529 U.S. 266, 272 (2000); Alabama v. White, 496 U.S. 325, 332 (1990).

Defendant has failed to demonstrate that the trial court plainly erred in denying his motion to suppress and admitting evidence of the drugs and paraphernalia on the grounds that his detention was not supported by reasonable suspicion. Point Two is denied.

### Conclusion

With respect to Point One, we remand to the trial court for further proceedings. With respect to Point Two, we affirm.

_Patricia L. Cohen_, Judge

Lisa S. Van Amburg, Presiding Judge and Philip M. Hess, Judge, Concur.

16