STATE of Missouri, Plaintiff-
Appellant,

v.

Angie Lynn PARKMAN, Defendant-
Respondent.

No. SD 34614

Missouri Court of Appeals,
Southern District,
Division One.

Filed: May 23, 2017

GREGORY L. BARNES, Jefferson City, MO, for Appellant.

KIMBERLY KOLLMEYER, Jefferson City, MO, for Respondent.

DON E. BURRELL, J.

The State brings this timely interlocutory appeal [1] to seek a reversal of the trial court's order granting Angie Lynn Parkman's ("Defendant") motion to suppress the seizure and search of her "person, home, purse, and cell phones" ("the suppression motion") after an evidentiary hearing.[2] The police searched Defendant's residence based on information suggesting that she was involved in illegal drug activity. Because the trial court did not decide whether Defendant had consented to the search, we reverse its ruling and remand the matter for further proceedings consistent with this opinion.

### Applicable Principles of Review and Governing Law

The State must present evidence that convinces the trial court, by a preponderance of the evidence, that a motion to

---

1. *See* section 547.200.1(3); Rule 30.02(a), Missouri Court Rules (2017). All statutory references are to RSMo 2000.

2. Defendant is charged with possession of a controlled substance, heroin, with intent to distribute, a violation of section 195.211.

suppress should be denied. *State v. Grayson*, 336 S.W.3d 138, 142 (Mo. banc 2011). "The circuit court's duty is 'to resolve any issues of credibility before ruling on the motion to suppress and to base its ruling on the facts as it perceived them to be true.'" *State v. Nebbitt*, 455 S.W.3d 79, 86 (Mo. App. E.D. 2014) (quoting *State v. Sanders*, 16 S.W.3d 349, 351 (Mo. App. W.D. 2000)).

A trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous. *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007). This Court defers to the trial court's factual findings and credibility determinations and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling. *Id.* Whether conduct violates the Fourth Amendment is a question of law, which is reviewed *de novo.*

*State v. McNeely*, 358 S.W.3d 65, 68 (Mo. banc 2012).

### Evidentiary and Procedural Background

■■ The suppression motion asserted that the search of Defendant's home and subsequent seizure of evidence "was without probable cause, without a warrant, and without consent." At the beginning of the evidentiary hearing, defense counsel agreed with the prosecutor's statement that Defendant was subject to a special condition of probation at the time of the search that she "shall consent to a search of [her] person, any car [s]he's driving or a passenger in, or [her] place of residence at any time [s]he's requested to do so by any law enforcement officer or probation officer" ("the special condition").[3]

Defense counsel maintained that despite the special condition, the search "was an improper search resulting in an improper seizure, because [Defendant] did not adequately give consent." In support of that position, defense counsel argued both that there had been "a show of force from law enforcement, and [Defendant] has an option of violating her probation or she has an option of taking on a new case, perhaps."

Lake Area Narcotics Enforcement Group Task Force Officer B.A. Pratt testified that he went to Defendant's home on June 22, 2015 because he "had received information that [Defendant] was involved in the distribution and use of opiates and other controlled substances." Officer Pratt could not "really give ... specific sources" for the information, and he could not remember whether the sources were "law enforcement officers, concerned citizens," or something else. At the time he went to Defendant's house, Officer Pratt knew that Defendant was on probation as a result of a previous "undercover narcotics investigation[.]"

---

3. In the appendix to its brief, the State includes a purported copy of an "**ORDER OF PROBATION**" for Defendant, but it does not appear that this document was admitted into evidence at the hearing or was otherwise made a part of the record on appeal. A document not admitted into evidence or filed with the court is not a part of the record on appeal, and we cannot consider it. *State v. Smith*, 292 S.W.3d 595, 599 (Mo. App. S.D. 2009). The State notes that "[t]he prosecutor asked the trial court to take judicial notice of" the circuit court case concerning Defendant's probation. But the State does not assert that the trial court actually granted that request, and that case file is not included in the record. The State argues that it "is available on Case.net[,]" but "[w]e may consider only those matters presented on the record made in the lower court." *State v. Collett*, 526 S.W.2d 920, 929 (Mo. App. St. L.D. 1975). "Although we may take judicial notice of our own records, matters of record in other courts are denied notice." *Id.* (citation omitted).

Another officer, Missouri State Highway Patrol Sergeant Wertz,[4] testified on behalf of the State, and Defendant also testified. The accounts provided by the officers conflicted with Defendant's testimony regarding whether she consented to a search. Defendant's testimony contradicted the officers' testimony about whether Officer Pratt used profanity or yelled when speaking with Defendant, and she also testified that she was unaware of the special condition until the officers told her about it on the day of the search.

Officer Pratt's testimony was that Defendant "answered the door and stepped outside on the front porch." Officer Pratt identified himself, and Defendant confirmed that she was on probation. Officer Pratt asked for consent to search, and Defendant "said, I'll let you search. Can I put my kids down in their bedroom downstairs?" Officer Pratt agreed and after a few minutes Defendant returned and led the officers into the residence.

Sergeant Wertz testified:

[W]hen Officer Pratt knocked on the door, [Defendant] answered. He—and there was conversation between the two about why we were there. Officer Pratt asked for consent to search, and [Defendant] wanted to have her kids go downstairs so they didn't see us, which she—Officer Pratt granted. She shut the front door, went down—went into the apartment, and then a short time later came back to the door and said, okay, my kids are downstairs. You can search.

Defendant's testimony on the matter was that the officers "just wanted to talk, come in and ask [her] a few questions."

She asked if she could "make sure [her] children weren't in the room." After doing so, she "went and stood on the front porch with the officers." The officers asked to go inside to talk and she let them inside. Instead of speaking with her, the officers "proceeded directly past [her] to the back and went straight into [her] bedroom" where they "conducted a search[.]"

The trial court's order granting the suppression motion stated that Officer Pratt "testified that he did not remember who gave him the information about [Defendant], nor how he received it[,]" and the officer had "no notes nor any contemporaneous rendition as to any details giving rise to the search which has resulted in [the suppression motion]." The trial court then made the following findings:

The first issue which must be considered is the reliability of the information received by the investigating officer. If said information is reliable, then the question as to [Defendant]'s consent to the search, and/or the probationary condition of her giving her consent will be addressed. [State v. Miller], 894 S.W.2d 649 (Mo. banc 1995).

There was also testimony from one other officer and [Defendant], but there is no evidence touching upon the information received by the investigating officer. However, all the testimony shows that there was no misconduct by any officer regarding the search. The Attenuation Doctrine[5] does not apply because there is no evidence that any officer committed any illegality.

---

4. We apologize if we have misspelled the sergeant's last name. It is spelled "Wertz" in the body of the transcript, but it is spelled "Worths" in the index to the transcript, and it is spelled as "Wirths" on the State's subpoena in the legal file.

5. *See Grayson*, 336 S.W.3d at 147, for a discussion of the application of this doctrine to permit the admission of evidence that would otherwise be excluded based upon a constitutional violation.

The State must show a preponderance of the evidence that the [suppression motion] should be overruled. [Citing *Grayson*, 336 S.W.3d at 142]. This the State has failed to do. There is no evidence that the information supplied to the officer was reliable. [The suppression motion] is granted.

## Analysis

In support of its point contending that "the search was conducted pursuant to an exception to the warrant requirement[,]" the State argues that "[t]he trial court clearly erred, as a matter of law, in holding that reliable information was needed to justify the search because 'suspicionless searches' are permitted where such a condition has been imposed on a probationer by a court." [6] The State also argues that "the [trial] court apparently agreed the search was authorized" because its order stated that " 'all the testimony shows that there was no misconduct by any officer regarding the search … [and] there is no evidence that any officer committed any illegality.' "

Defendant responds that, while *Samson v. California*, 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), "eliminates the need for suspicion in searches with regards to parolees" who are subject to search conditions, the opinion "does not speak as to probationers" who are subject to search conditions. [7] Defendant insists that she "did not consent to the resulting search, and any purported consent was the product coercion [sic] by law enforcement officers." Defendant also argues that "although [she] is entitled to a lesser degree of privacy [based upon the special condition], individualized or reasonable suspicion is still required to warrant an intrusion."

 Reasonable suspicion or "reliable information" was not required for Officer Pratt to knock on Defendant's door and ask her to consent to a search. "[I]t is altogether proper for the police to call at a particular house to seek admittance in the course of a criminal investigation, or other official business." *State v. Akers*, 723 S.W.2d 9, 14-15 (Mo. App. W.D. 1986). The ability of an officer to call upon "a residence, *without any other justification*, allows him or her to investigate a crime or to conduct official business at a residence in places where the public is invited." *State v. Kriley*, 976 S.W.2d 16, 22 (Mo. App. W.D. 1998) (emphasis added). "A search conducted without a warrant but with proper consent is valid under the Fourth Amendment of the United States Constitution." *Sanders*, 16 S.W.3d at 351. "Whether a consent was voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." *State v. Petrone*, 836 S.W.2d 484, 488 (Mo. App. S.D. 1992).

**6.** *Cf. U.S. v. Knights*, 534 U.S. 112, 120 n.6, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (referencing "a search by a law enforcement officer without any individualized suspicion" as "a suspicionless search").

**7.** In *Samson,* the United States Supreme Court considered a statutory parole condition permitting a search "with or without cause" and held "that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Id.* at 846, 856, 126 S.Ct. 2193. *Cf. State v. Fetterhoff,* 739 S.W.2d 573, 576 (Mo. App. E.D. 1987) ("evidence obtained from a B.A. [blood alcohol] test given pursuant to a probation consent provision may be used in the prosecution for a new offense as well as a probation revocation proceeding"). We do not reach the question of the legal effect of the special condition in this decision because the factual circumstances surrounding the special condition have not yet been determined.

While the trial court found "no misconduct by any officer regarding the search" and "no evidence that any officer committed any illegality[,]" we do not read these statements as supporting an inference that Defendant voluntarily consented to the search. Rather, the trial court expressly indicated that it would *not* decide the facts "as to [Defendant]'s consent to the search, and/or the probationary condition of her giving her consent" unless it found that the information given to Officer Pratt was reliable. As to that question, the trial court plainly stated, "There is no evidence that the information supplied to the officer was reliable."

"It is the province of the trial court to determine what actually took place, and we defer to that determination." *State v. Spradling*, 413 S.W.3d 670, 675 (Mo. App. S.D. 2013). Therefore, when the trial court does not decide critical facts governing the issue of consent, we cannot usurp its role and make the determination ourselves. Instead, we must remand the case to allow the trial court to perform that crucial task. *Cf. Sanders*, 16 S.W.3d at 351-52 (case remanded for further proceedings where "the circuit court did not resolve the factual issues [concerning consent] and applied the wrong standard of proof").

The order granting the suppression motion is reversed, and the matter is remanded to the trial court to resolve the factual dispute about whether Defendant consented to the search.[8]

JEFFREY W. BATES, P.J.—
CONCURS

MARY W. SHEFFIELD, C.J.—
CONCURS

---

8. Whether the trial court decides the matter based on the evidence already adduced or orders an additional evidentiary hearing is a matter we leave to its sound discretion. *See State v. Howell*, 524 S.W.2d 11, 19 (Mo. banc 1975); *cf. State v. Milliorn*, 794 S.W.2d 181, 187 n.4 (Mo. banc 1990) (opinion affirming suppression of evidence did "not necessarily end the inquiry," as the trial court could still take additional evidence on the suppression issue given the interlocutory nature of motions to suppress).